NOT DESIGNATED FOR PUBLICATION

No. 123,425

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

N. B.,
*Appellant*,

v.

A. W.,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Opinion filed November 12, 2021. Affirmed.

*Richard W. Martin Jr.*, of Martin & Wallentine LLC, of Olathe, for appellant.

No appearance by appellee.

*Valerie L. Moore*, of Lenexa, guardian ad litem.


Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.


PER CURIAM:  In a paternity action, before ordering a paternity test to determine whether the alleged parent is a biological parent, the district court must consider the "best interests of the child, including physical, mental, and emotional needs." *In re Marriage of Ross*, 245 Kan. 591, Syl. ¶ 5, 783 P.2d 331 (1989).

N.B. filed a petition for determination of paternity that claimed he was the natural father of some of the children born to A.W. while A.W. was married to M.B. The district

court appointed a guardian ad litem (GAL) to make a recommendation on whether ordering genetic testing would be in the children's best interest. The GAL could not speak with the children because A.W. refused to cooperate. Even though the GAL could not speak with the children, she argued that ordering genetic testing would not be in the children's best interests.

After considering the GAL's argument, the district court agreed and denied the request for genetic testing. Without genetic testing, N.B. could not rebut the presumption that M.B. was the father of the children and the district court dismissed his petition. N.B. appeals.

FACTUAL AND PROCEDURAL HISTORY

On January 15, 2019, N.B. petitioned for determination of paternity. He alleged that the respondent A.W. was married to M.B., but M.B. was unable to have more children with A.W. Because of that, M.B. and A.W. sought a sperm donor from M.B.'s family and chose N.B., a relative of M.B. N.B. alleged that he was the natural father of three of A.W.'s children (Children), the first of which was born in 2006.

After a hearing at which both parties appeared, the court appointed a GAL.

At the final hearing, N.B. appeared pro se and A.W. did not appear. The GAL also appeared at the hearing. According to the journal entry, N.B. did not pay the ordered GAL fees or meet with the GAL until over seven months after the GAL was appointed. A.W. refused to meet with the GAL or pay the ordered fees. The GAL did not receive any information from A.W., nor was the GAL able to discuss the case with A.W. However, the district court noted that the GAL believed she could "offer her position on this matter without the input of [A.W.] and does not feel this matter should be delayed as a result of [A.W.'s] failure to abide court orders."

2

The district court found that there was a presumption that M.B. was the father of the children because of his marriage to A.W. at the time of the birth of each child. According to the journal entry, the GAL argued that "it was not in the children's best interests to order genetic testing of the minor children." As far as the GAL could tell, the children believe that M.B. was their father. The GAL was also "concerned about the possible financial repercussions to the children should their parentage be in question— specifically any inheritance and/or Social Security death benefits." The GAL also "expressed concerns about the timing of this Petition—[N.B.] waited *thirteen* years to file a Petition for Parentage."

The district court denied N.B.'s petition, finding that it was not in the children's best interests to order genetic testing. N.B. timely appeals.

ANALYSIS

On appeal, N.B. argues that the district court erred by receiving and relying on the GAL's recommendations when the GAL did not perform her duties as required by law and that, by relying on the GAL, the district court erred in denying the petition for paternity. A.W. did not file a brief in response. The GAL filed a brief.

*M.B. is the presumptive father of the Children.*

Under Kansas law, a man is presumed to be a child's father if "[t]he man and the child's mother are, or have been, married to each other and the child is born during the marriage or within 300 days after the marriage is terminated by death or by the filing of a journal entry of a decree of annulment or divorce." K.S.A. 2020 Supp. 23-2208(a)(1). This presumption "may be rebutted only by clear and convincing evidence, by a court decree establishing paternity of the child by another man." K.S.A. 2020 Supp. 23-2208(b). There is no dispute that M.B. is the presumptive father of the Children.

3

*When the paternity of a child is in issue, the court must order genetic testing if it is in the best interests of the child.*

Under K.S.A. 2020 Supp. 23-2212(a), the district court "shall order" genetic testing in any action or judicial proceeding whenever the paternity of a child is in issue. But before ordering such a test, the district court must consider the "best interests of the child, including physical, mental, and emotional needs." *In re Marriage of Ross*, 245 Kan. 591, Syl. ¶ 5.

*The district court appointed a GAL to represent the interests of the Children due to the differing interests of the Children and N.B.*

The district court properly appointed a GAL to represent the interests of the Children. In fact, the law requires as much "if the court finds that the interests of the child and the interests of the petitioner differ." K.S.A. 2020 Supp. 23-2219(b). Once appointed, the GAL has a duty to "make an independent investigation of the facts upon which the petition is based and to appear for and represent the best interests of the child." 245 Kan. 591, Syl. ¶ 3.

*The GAL did not have any contact with the Children as required by Supreme Court Rule.*

In this case, N.B. argues that the GAL did not perform her duties as required because the GAL did not speak with A.W. or the Children before reaching her determination.

Under Kansas Supreme Court Rule 110A(c)(1) (2021 Kan. S. Ct. R. 191), a GAL is required to:

"[C]onduct an independent investigation and review all relevant documents and records. . . . Interviews—either in person or by telephone—of the child, parents, social workers, relatives, school personnel, court-appointed special advocates (CASAs), caregivers, and others having knowledge of the facts are recommended. Continuing investigation and ongoing contact with the child are mandatory."

When determining the best interests of a child, the GAL must consider several factors, including the child's age, maturity, culture and ethnicity, degree of attachment to family members, continuity, consistency, permanency, and the child's sense of belonging and identity. Kansas Supreme Court Rule 110A(c)(2).

A.W. refused to cooperate with the GAL, so the GAL could not meet with the Children. Nevertheless, the GAL notes in her brief, N.B. made it clear that he had no interest in financially supporting the Children and that if A.W. sought reimbursement from N.B. he would be "force[d] to sue her for the lost times, medical treatments, and psychological disorders [he] went through." In his supporting documents, N.B. also was clear to note that M.B. "left a lot of money and still there was money coming in from his retirement." Moreover, the GAL noted their concern with the timing of N.B.'s petition, a full 13 years after the birth of the eldest child and 9 years after the death of M.B.

*The court must independently decide what is in a child's best interests in a paternity action.*

Before ordering a paternity test to determine whether the presumed parent is a biological parent, the district court must consider the "best interests of the child, including physical, mental, and emotional needs." *In re Marriage of Ross*, 245 Kan. 591, Syl. ¶ 5. As the Kansas Supreme Court noted, the "shifting of paternity from the presumed father to the biological father could easily be detrimental to the emotional and physical well-being of any child." 245 Kan. at 602.

5

N.B. argues the district court erred in accepting recommendations from the GAL because the GAL did not meet with the Children. And while N.B. is correct that the Rules require the GAL to meet with the Children, he offers no cases to support his argument that the *failure* to meet with the Children or to not obtain any relevant documents and records means that the court cannot consider the GAL's recommendations even though limited.

The court appoints a GAL to provide information that may assist it in determining the best interests of a child, but the decision whether to follow the GAL's recommendations, in whole or in part or not at all, is totally a discretionary one with the court. See *State, ex rel. Secretary, DCF v. M.R.B.*, 313 Kan. 855, 863, 491 P.3d 652 (2021) (finding that the court is not required to agree with the GAL). So the mere fact that the district court may have adopted "the GAL *Ross* investigation" and arrived at the same conclusion as the GAL—clearly knowing the limits of the GAL's investigation—does not establish an error, let alone provide a reason to reverse the court's decision.

*We review the evidence in the light most favorable to A.W.*

This brings us to N.B.'s main argument—that the district court erred when it determined that genetic testing was not in the best interests of the Children.

When a party challenges the sufficiency of the evidence to support a trial court's findings regarding a child's best interests, the appellate court reviews the evidence in a light most favorable to the prevailing party, in this case A.W. 313 Kan. 855, Syl. ¶ 4.

Here our review is limited by the lack of a complete appellate record. We have no information about why A.W. failed to cooperate or why the district judge did not act on her lack of cooperation. We know A.W. answered the petition, but we do not have a copy of the answer in the record on appeal. Nor do we have a copy of the transcript of the

initial hearing in this matter when both parties and A.W.'s attorney were present. Likewise, we have no transcript of the second hearing when a GAL was appointed, N.B. appeared and A.W.'s counsel appeared. We have no transcript of the final hearing when the district court denied N.B.'s request for genetic testing and terminated the case. (Although N.B. asserts in his brief that two of those hearings were either not transcribed or the audio quality was too poor to transcribe them.) Although we have some allegations in pleadings filed that M.B. left a substantial estate and the GAL was concerned about the Children's ability to inherit from that estate if N.B were declared their father, we are not able to review the domestic relations affidavits and proposed parenting plan filed in the case because they are not included in the record on appeal. We do not even have a copy of the GAL's report to the court in the record on appeal.

The burden is on the party making a claim to designate a record sufficient to present its points to the appellate court and to establish its claims. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Likewise, if a party believes the court's findings were inadequate that party bears the responsibility to object and give the district court an opportunity to correct any alleged inadequacies. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). When no such objection is made, we presume the district court found all facts necessary to support its judgment. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017).

Moreover, the facts relied upon by the district judge to find that it was not in the Children's best interest to order a paternity test do not appear to be in dispute.

In this case, N.B. has admitted through his pleadings that he was not going to take responsibility for any support of the Children—"because [M.B.] registered the kids in his name, and he promised me not to worry about the wellbeing or the support." He also stated that M.B. "left a lot of money and still there was money coming in from his retirement." He stated that he has had no contact with the Children for "all of these years

7

since [M.B.]" passed away. (We take judicial notice that M.B. passed away in 2010.) The GAL stated as an officer of the court that it was her belief that the Children believe that M.B. was their father "and have their entire lives." She also stated that the Children were receiving social security benefits as a result of M.B.'s death. Finally, it is undisputed that N.B. waited almost 13 years after the oldest child's birth to bring this claim. These were the facts upon which the district judge said she based her decision.

Based upon the facts before us as well as the presumption that the district court found all facts necessary to support its judgment, we find that there was sufficient evidence to support the district court's finding that it was not in the Children's best interests to order genetic testing. As a result, the district court did not err when it denied N.B.'s petition for determination of parentage. M.B. was the presumed father of the Children. See K.S.A. 2020 Supp. 23-2208(a)(1). Because genetic testing was unavailable, and because N.B. offered no other evidence to rebut that presumption of paternity, the district court correctly denied N.B.'s petition. See K.S.A. 2020 Supp. 23-2208(b).

Affirmed.